GREGORY C. LOARIE, State Bar No. 215859
CHRISTOPHER W. HUDAK, State Bar No. 282283
Earthjustice
50 California Street, Suite 500
San Francisco, CA 94111
T: (415) 217-2000 / F: (415) 217-2040
gloarie@earthjustice.org
chudak@earthjustice.org

*Counsel for Proposed Defendant-Intervenors*
*The Wilderness Society, et al.*

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA
SACRAMENTO DIVISION

| | |
|---|---|
| FRIENDS OF TAHOE FOREST ACCESS; WEBILT FOUR WHEEL DRIVE CLUB; FRIENDS OF GREENHORN; NEVADA COUNTY WOODS RIDERS; GRASS VALLEY 4-WHEEL DRIVE CLUB; HIGH SIERRA MOTORCYCLE CLUB; DAVID C. WOOD, an individual; and KYRA, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF AGRICULTURE; TOM VILSACK, in his official capacity as Secretary of the Department of Agriculture; UNITED STATES FOREST SERVICE; TOM TIDWELL, in his official capacity as Chief of the United States Forest Service; RANDY MOORE, in his official capacity as Regional Forester for the United States Forest Service's Pacific Southwest Region; and TOM QUINN, in his official capacity as Forest Supervisor at the Tahoe National Forest,<br><br>Defendants,<br><br>and<br><br>THE WILDERNESS SOCIETY; MOTHER LODE CHAPTER OF THE SIERRA CLUB; FOREST ISSUES GROUP; SIERRA FOOTHILLS AUDUBON SOCIETY; and PUBLIC EMPLOYEES FOR ENVIRONMENTAL RESPONSIBILITY,<br><br>Proposed Defendant-Intervenors. | Case No. 2:12-cv-01876-JAM-CKD<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE WILDERNESS SOCIETY, *ET AL.'S* MOTION TO INTERVENE<br><br>Date: November 7, 2012<br>Time: 9:30 a.m.<br>Judge: Hon. John A. Mendez<br>Place: Courtroom 6 |

**TABLE OF CONTENTS**


INTRODUCTION ....................................................................................................................1

BACKGROUND ....................................................................................................................2

ARGUMENT ........................................................................................................................3

I. PROPOSED INTERVENORS ARE ENTITLED TO INTERVENE AS OF RIGHT IN THIS LITIGATION............................................................................................3

A. Proposed Intervenors' Motion to Intervene is Timely. ............................................4

B. Proposed Intervenors Have a Significant Protectable Interest in Tahoe National Forest. ..........................................................................................4

1. Proposed Intervenors' Interests in Tahoe National Forest Are Protected By Law. ...................................................................................5

2. There is a Relationship Between Proposed Intervenors' Interests in Tahoe National Forest and FTFA's Claims in this Case. ..............................6

C. Proposed Intervenors' Interests in Tahoe National Forest May Be Impaired as a Result of This Litigation. .........................................................................7

D. The Existing Parties to this Litigation Do Not Represent Adequately Proposed Intervenors' Interests in Tahoe National Forest...........................................8

II. ALTERNATIVELY, PROPOSED INTERVENORS SATISFY THE STANDARD FOR PERMISSIVE INTERVENTION...........................................................11

CONCLUSION......................................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Associated Gen. Contractors of Am. v. Cal. Dep't of Transp.*, 2009 WL 5206722 (E.D. Cal. 2009) .......... 3, 8

*California Dep't of Toxic Substances Control v. Commercial Realty Projects, Inc.*, 309 F.3d 1113 (9th Cir. 2002) .......... 4

*California Dump Truck Owners Ass'n v. Nichols*, 275 F.R.D. 303 (E.D. Cal. 2011) .......... 6

*California ex rel. Lockyer v. United States*, 450 F.3d 436 (9th Cir. 2006) .......... 7, 9

*Ctr. for Biological Diversity v. U.S. Dep't of Interior*, 623 F.3d 633, 642 (9th Cir. 2010) .......... 10

*Cent. for Sierra Nevada Conservation v. U. S. Forest Serv.*, 832 F.Supp.2d 1138 (E.D. Cal. 2011) .......... 10

*Cent. Sierra Envtl. Res. Ctr. v. U. S. Forest Serv.*, Civ. No. 10-2172 KJM-GGH (E.D. Cal., filed Feb. 4, 2011) .......... 9

*Donnelly v. Glickman*, 159 F.3d 405 (9th Cir. 1998) .......... 6

*Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489 (9th Cir. 1995) .......... 9

*Idaho Conservation League v. Guzman*, 766 F.Supp.2d 1056 (D. Idaho. 2011) .......... 9

*Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392 (9th Cir. 1995) .......... 7

*Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094 (9th Cir. 2002) .......... 11

*Oregon Natural Desert Ass'n v. Bureau of Land Mgmt.*, 625 F.3d 1092 (9th Cir. 2008) .......... 5

*Pac. Coast Fed'n of Fishermen's Ass'ns. v. Gutierrez*, 2008 WL 4104257 (E.D. Cal. 2008) .......... 10

*Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525 (9th Cir. 1983) .......... 7

*Sierra Club v. Espy*,
18 F.3d 1202 (5th Cir. 1994) ....................................................................................9

*Southwest Ctr. for Biological Diversity v. Berg*,
268 F.3d 810 (9th Cir. 2001) ................................................................................8, 9

*United States v. Alisal Water Corp.*,
370 F.3d 915 (9th Cir. 2004) ....................................................................................5

*United States v. Washington*,
86 F.3d 1499 (9th Cir.1996) .....................................................................................4

*Wilderness Soc'y v. U.S. Forest Serv.*,
630 F.3d 1173 (9th Cir. 2011) ............................................................................ passim

**STATUTES**

16 U.S.C. § 1536(a)(2)..........................................................................................................6

42 U.S.C. § 4332(2)(C)..........................................................................................................5

**REGULATIONS**

36 C.F.R. Part 212.................................................................................................................2

36 C.F.R. § 212.5(b)(1)..........................................................................................................2

36 C.F.R. § 212.51(a)........................................................................................................2, 6

36 C.F.R. § 212.55(b) .......................................................................................................2, 6

36 C.F.R. § 212.56 .................................................................................................................2

36 C.F.R. § 261.13 .................................................................................................................2

40 C.F.R. § 1500.1 .................................................................................................................5

**RULES**

Federal Rule of Civil Procedure 24(a) ........................................................................... passim

Federal Rule of Civil Procedure 24(b)...........................................................................11, 12

**INTRODUCTION**

In 2005, the Chief of the United States Forest Service advised Congress that the proliferation of off-highway vehicles ("OHVs") represents "one of the four key threats affecting national forests and grasslands."[1] This is because OHVs can devastate natural ecosystems, harm wildlife, destroy native vegetation, and pollute streams and rivers. Close to urban centers and famed for its natural beauty, Tahoe National Forest ("the Tahoe") in the northern Sierra Nevada has been hit by a dramatic rise in OHV use, resulting in hundreds of miles of unplanned routes through sensitive areas, polluted headwaters of rivers that supply water to millions of Californians, and a startling loss of the very wilderness character that draws millions of visitors every year.

In an effort to address the threat posed by OHVs and to protect the Tahoe for future generations, the Forest Service issued a decision (the "Tahoe Travel Decision") in September 2010 to manage motorized vehicle use within the forest. The Tahoe Travel Decision took over five years to develop and involved extensive public participation, with OHV groups arguing for virtually unlimited motorized access, and environmental groups – including all of the organizations now moving to intervene – advocating for strong environmental protections. The Forest Service ultimately chose a middle path that provides significant accommodations to motorized vehicles, allowing their access on approximately 2,000 miles of roads, 385 miles of trails, and 244 acres of open "play" areas within the Tahoe.

Despite the Forest Service's efforts at compromise, plaintiffs Friends of Tahoe Forest Access, *et al.* (collectively, "FTFA") brought this action on July 17, 2012 seeking to have the Tahoe Travel Decision set aside and the forest reopened to unbridled OHV use. As set forth below, The Wilderness Society, Sierra Club Mother Lode Chapter, Public Employees for Environmental Responsibility, Forest Issues Group, and Sierra Foothills Audubon Society (collectively, "Proposed Intervenors") have worked for decades to protect the Tahoe and secure reasonable restrictions on

---

[1] Statement of Dale Bosworth, Chief of the Forest Service, Before the Subcommittee on Forests and Forest Health and the Subcommittee on National Parks, Recreation, and Public Lands, Committee on Resources, United States House of Representatives (Jul. 13, 2005), p.4, *available at* http://republicans.resourcescommittee.house.gov/UploadedFiles/BosworthTestimony07.13.05.pdf (last visited on Sept. 24, 2012).

OHV use. Because this lawsuit threatens to undermine much of their work, Proposed Intervenors respectfully request that they be allowed to intervene as defendants in this litigation to ensure that their longstanding interests are represented.

## BACKGROUND

Title 36, Part 212 of the Code of Federal Regulations, commonly referred to as the travel management regulations, directs the Forest Service to establish travel management decisions for all the national forests. The regulations codify executive orders issued in the 1970s that sought to address the harmful impacts of OHVs on public lands. Subpart A of the regulations requires, among other things, that the Forest Service "identify the minimum road system needed for safe and efficient travel and for administration, utilization, and protection of National Forest System lands." 36 C.F.R. § 212.5(b)(1). Subpart B requires that the Forest Service designate a system of roads, trails, and areas available for motor vehicle use. *Id.* § 212.51(a). In designating this system, national forests are required to consider and to minimize environmental impacts and conflicts between motorized and non-motorized recreation. *Id.* § 212.55(b). A national forest motorized travel decision, such as the Tahoe Travel Decision at issue here, sets the stage for the production of a detailed map, called a motor vehicle use map, which delineates every road and trail in the forest and indicates "the classes of vehicles and, if appropriate, the times of year for which use is designated." *Id.* § 212.56. After roads and trails are designated and identified on a motor vehicle use map, it is illegal to possess or operate a motor vehicle on those roads in a manner inconsistent with its designated use. *Id.* § 261.13.

To implement the travel management regulations on Tahoe National Forest, the Forest Service began to inventory the forest's roads and trails in 2003. After a series of public meetings and workshops, the Forest Service released a Draft Environmental Impact Statement ("DEIS") in 2008. Following extensive comments from Proposed Intervenors and others on the DEIS, the Forest Service issued a supplemental DEIS in 2010 and held further public meetings. The process culminated in September 2010 with the release of the Record of Decision ("ROD") for the Tahoe National Forest Motorized Travel Management Final Environmental Impact Statement ("FEIS"), the Tahoe Travel Decision at issue herein.

Six organizations and two individuals who use OHVs filed the instant case on July 17, 2012. The complaint alleges that the Forest Service violated the National Environmental Policy Act ("NEPA") in adopting the Travel Management Decision. *See* Complaint for Declaratory and Injunctive Relief (July 17, 2012) ("Complaint") at ¶ 1. The lawsuit seeks, among other things, an order setting aside the Tahoe Travel Decision and a permanent injunction preventing the Forest Service from restricting OHV travel in the Tahoe. *See* Complaint, Prayer for Relief ¶¶ 1-3.

## ARGUMENT

### I. Proposed Intervenors Are Entitled to Intervene as of Right in this Litigation.

Federal Rule of Civil Procedure 24(a) provides:

> On timely motion, the court must permit anyone to intervene who … claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a). The Ninth Circuit "construe[s] the Rule broadly in favor of proposed intervenors" in an analysis that is guided by "practical and equitable considerations." *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (en banc). According to the Ninth Circuit, its "liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts." *Id.*; *see also Associated Gen. Contractors of Am. v. Cal. Dep't of Transp.*, 2009 WL 5206722, *2 (E.D. Cal. 2009) (this Court noting that Rule 24(a)'s liberal construction also requires a court to "take all well-pleaded, nonconclusory allegations in the motion…as true absent sham, frivolity, or other objections").

The Ninth Circuit has established a four-part test to determine whether intervention as a matter of right is warranted:

> (1) The motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be adequately represented by the parties to the action.

*Wilderness Soc'y*, 630 F.3d at 1177. Proposed Intervenors in this case readily satisfy these elements.

**A. Proposed Intervenors' Motion to Intervene is Timely.**

If a motion for intervention is filed prior to judgment in a case, courts examine three factors to determine timeliness: "(1) the stage of the proceedings at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *California Dep't of Toxic Substances Control v. Commercial Realty Projects, Inc.*, 309 F.3d 1113, 1119 (9th Cir. 2002) (citing *United States v. Washington*, 86 F.3d 1499, 1503 (9th Cir.1996)). Under this test, Proposed Intervenors' motion is timely. Approximately two and a half months have passed since FTFA filed its complaint, and this action is in its very early stages. The complaint has not been answered and the administrative record has not yet been filed. Under these circumstances, intervention will not prejudice the existing parties or delay the proceedings.

**B. Proposed Intervenors Have a Significant Protectable Interest in Tahoe National Forest.**

According to the Ninth Circuit, the requirement that a party seeking intervention as of right have an "interest" in the subject of the lawsuit "is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Wilderness Soc'y,* at 1179. Here, Proposed Intervenors' longstanding and well-documented interest in Tahoe National Forest and the Tahoe Travel Decision is beyond dispute. Proposed Intervenors are public interest environmental organizations with offices, headquarters, or staff located in California that have worked for years to protect the natural resources of the Sierra Nevada. *See* Declaration of Matthew Dietz ("Dietz Dec.") at ¶¶ 2-4 (The Wilderness Society); Declaration of Barbara Rivenes ("B. Rivenes Dec.") at ¶¶ 2-6 (Sierra Club Mother Lode Chapter); Declaration of Donald Rivenes ("D. Rivenes Dec.") at ¶¶ 2-5 (Sierra Foothills Audubon Society and Forest Issues Group); Declaration of Karen Schambach ("Schambach Dec.") at ¶¶ 2, 4 (Public Employees for Environmental Responsibility") (all submitted herewith). Proposed Intervenors have long worked to protect the Tahoe and have many members who regularly visit the forest for its outstanding opportunities to enjoy solitude, backpacking, birdwatching, camping, and other quiet-use activities. *See* Dietz Dec. at ¶¶ 4-7; B. Rivenes Dec. at ¶¶ 5-8; D. Rivenes Dec. at ¶¶ 5-8; Schambach Dec. at ¶¶ 3-6. Each of Proposed Intervenors has also been deeply involved in the

Tahoe Travel Decision process, including submitting extensive comments and administratively appealing the Decision. *See* Dietz Dec. at ¶ 4; B. Rivenes Dec. at ¶ 6; D. Rivenes Dec. at ¶ 5; Schambach Dec. at ¶ 4. Proposed Intervenors have also completed field surveys in the Tahoe to document environmental damage caused by OHVs. *See* Schambach Dec. at ¶ 4.

Nor is there any question that Proposed Intervenors' interest is "significantly protectable." *Wilderness Soc'y*, 630 F.3d at 1177. To determine whether an intervenor-applicant has a "significantly protectable" interest in the action, "it is generally enough that the interest is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue."[2] *Id*. at 1179. Proposed Intervenors meet this test.

**1. Proposed Intervenors' Interests in Tahoe National Forest Are Protected By Law.**

An interest is "significantly protectable" if it is "protectable under *any* statute." *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004) (emphasis added). Here, Proposed Intervenors' interests in Tahoe National Forest's ecological, biological, scientific, scenic, historic and aesthetic resources are protected by a number of environmental and land management statutes.

Proposed Intervenors have a protectable interest under the National Environmental Policy Act ("NEPA"), which is the "basic national charter for protection of the environment." 40 C.F.R. § 1500.1. At its core, NEPA requires that all federal agencies consider potential environmental impacts in the course of agency decision-making and solicit public input through preparation of an environmental impact statement before executing any "major federal action significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). According to the Ninth Circuit, NEPA is the "broadest and perhaps most important" of all federal environmental laws. *Oregon Natural Desert Ass'n v. Bureau of Land Mgmt.*, 625 F.3d 1092, 1100 (9th Cir. 2008). Proposed Intervenors' interests in Tahoe National Forest are also protected by the Endangered Species Act,

[2] Prior to the Ninth Circuit's en banc opinion in *Wilderness Society*, the so-called "federal defendant" rule provided that only the federal government had an interest in compliance with NEPA. *See Wilderness Soc'y*, 630 F.3d at 1176. In *Wilderness Society*, the Ninth Circuit concluded that the federal defendant rule is contrary to the language of Rule 24(a)(2). *Id.* Now, the "operative inquiry" whether a proposed intervenor demonstrates a "significantly protectable" interest in a NEPA action is whether "the interest is protectable under some law and whether there is a relationship between the legally protected interest and the claims at issue." *Id.* (internal citations and quotations omitted).

which requires the Forest Service to ensure that its actions will not jeopardize the continued existence of threatened or endangered species. 16 U.S.C. § 1536(a)(2).

Proposed Intervenors' interests are also protected by the travel management regulations pursuant to which the Forest Service issued the Tahoe Travel Decision at issue in this litigation. *See California Dump Truck Owners Ass'n v. Nichols*, 275 F.R.D. 303, 306-307 (E.D. Cal. 2011) (finding significantly protectable interest of environmental group under a California Air Resources Board regulation). As discussed above, Subpart B of the Travel Management Regulations requires that national forests establish a designated system of National Forest System roads, trails, and areas available for motorized use. 36 C.F.R. § 212.51(a). The regulations require that, in designating National Forest System roads, trails, and areas for motor vehicle use, the responsible official must consider certain "specific criteria," with the "objective of minimizing:" (1) damage to soil, watershed, vegetation, and other forest resources, (2) harassment of wildlife and significant disruption of wildlife habitats, (3) conflicts between motor vehicle use and existing or proposed recreational uses of National Forest System lands or neighboring Federal lands, (4) conflicts among different classes of motor vehicle uses of national Forest System lands or neighboring Federal lands, and (5) compatibility of motor vehicle use with existing conditions in populated areas, taking into account sound, emissions, and other factors. 36 C.F.R. § 212.55(b).

Since the Proposed Intervenors' interests in Tahoe National Forest's natural resources are legally protectable under these and other federal statutes and regulations, they have "legally protectable interests" for purposes of Rule 24(a).

**2. There is a Relationship Between Proposed Intervenors' Interests in Tahoe National Forest and FTFA's Claims in this Case.**

There also exists the requisite "relationship" between Proposed Intervenors' interest in protecting Tahoe National Forest from the harmful effects of OHVs and FTFA's claims in this case, because resolution of FTFA's claims will "actually affect" the interests of Proposed Intervenors. *See Donnelly v. Glickman*, 159 F.3d 405, 410 (9th Cir. 1998).

Each of FTFA's seven claims for relief allege violations of NEPA. *See* Complaint, ¶¶ 62, 71, 79, 84, 90, 98, 106. Resolution of FTFA's NEPA claims will have a direct impact on Proposed

Intervenors' interests under NEPA, because FTFA asks this Court to strike down the Decision for alleged violations of NEPA and to enjoin the Decision's restrictions on OHVs as a new decision is developed. *See* Complaint, Prayer for Relief ¶¶ 1-3. Such an outcome would result in years of unbridled OHV use in the Tahoe, directly harming Proposed Intervenors' interests in minimizing damage from OHVs to the Tahoe. *See* Dietz Dec. at ¶¶ 9-11; B. Rivenes Dec. at ¶ 10; D. Rivenes Dec. at ¶ 10; Schambach Dec. at ¶ 8. Therefore, a close relationship exists between Proposed Intervenors' protected interests in environmental protection of the Tahoe and FTFA's claims.

**C. Proposed Intervenors' Interests in Tahoe National Forest May Be Impaired as a Result of This Litigation.**

Under the third prong of the Rule 24(a) intervention test, an applicant for intervention as of right must be "so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest." Fed. R. Civ. P. 24(a). The Ninth Circuit interprets this to mean that "[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." *California ex rel. Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006) (citing the Advisory Committee Notes for Rule 24(a)). The Ninth Circuit and other courts have long held that conservation groups may intervene as of right in actions that may result in harm to natural and other resource values that are important to the groups' missions and where the groups have worked to protect such values. *See, e.g. Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1398 (9th Cir. 1995) (concluding that the impairment prong of the intervention test was satisfied where plaintiff's claim could impair conservation groups' ability to protect an interest in a threatened species for which they had advocated); *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 527-28 (9th Cir. 1983) (holding that there "can be no serious dispute" regarding impairment where litigation seeks to invalidate a conservation area designation and proposed intervenors had interests in protecting wildlife and habitat).

In this case, FTFA seeks an order from this Court striking down the Tahoe Travel Decision as well as an injunction prohibiting enforcement of restrictions on OHV use pursuant to the Tahoe Travel Decision or travel management regulations until a new travel decision is completed. *See* Complaint, Prayer for Relief ¶¶ 1-3. Should FTFA be successful, the Tahoe would be left without

protections on OHV use until a new travel decision is developed, which, based on the timeframe for the current Decision, could take years. Should FTFA achieve the relief it seeks in this litigation the Tahoe Travel Decision would be invalidated because of its restrictions on OHV use and any subsequent travel decision could provide less restrictions on OHV traffic than the existing Decision.

Such relief would have a significant adverse impact on Proposed Intervenors' work to defend and preserve the extraordinary natural resources of Tahoe National Forest. *See* Dietz Dec. at ¶ 11; B. Rivenes Dec. at ¶ 10; D. Rivenes Dec. at ¶ 10; Schambach Dec. at ¶ 8. Moreover, such relief would harm Proposed Intervenors' members' ability to use and enjoy Tahoe National Forest for recreational, spiritual, educational, scenic and aesthetic purposes. *See* Dietz Dec. at ¶¶ 5, 9-11; B. Rivenes Dec. at ¶¶ 5, 10; D. Rivenes Dec. at ¶¶ 6, 10; Schambach Dec. at ¶¶ 3, 8. Indeed, OHVs are known to harm or kill sensitive plant and animal species, destroy wildlife habitat`, ruin scenic values and wilderness character, facilitate vandalism and the destruction of cultural resources, import invasive, non-native plant species, and emit pollutants that harm water and air quality. *See* Dietz Dec. at ¶ 8; B. Rivenes Dec. at ¶ 9; D. Rivenes Dec. at ¶ 9; Schambach Dec. at ¶ 7. Ultimately, Proposed Intervenors' members ability to use and enjoy Tahoe National Forest in the future will be impaired if FTFA achieves the relief it seeks through this litigation. *See* Dietz Dec. at ¶¶ 9-11; B. Rivenes Dec. at ¶ 10; D. Rivenes Dec. at ¶ 10; Schambach Dec. at ¶ 8.

### D. The Existing Parties to this Litigation Do Not Represent Adequately Proposed Intervenors' Interests in Tahoe National Forest.

While it is incumbent on Proposed Intervenors to demonstrate that the existing parties to the litigation do not represent adequately their interests, "the burden of showing inadequacy is 'minimal,' and the applicant need only show that representation of its interests by existing parties 'may be' inadequate." *Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 823 (9th Cir. 2001); *see also Associated Gen. Contractors of Am.*, 2009 WL 5206722 at *2 (this Court noting that the burden of showing inadequacy of representation is "minimal").

In this case, it is clear that the plaintiffs do not adequately represent Proposed Intervenors' interests. Indeed, their interest in reducing or eliminating restrictions on OHV traffic in Tahoe National Forest is in direct conflict with Proposed Intervenors' interest in opposing such increases in

OHV traffic. *See* Dietz Dec. at ¶¶ 9-11; B. Rivenes Dec. at ¶ 10; D. Rivenes Dec. at ¶ 10; Schambach Dec. at ¶ 8.

Proposed Intervenors' interests are likewise inadequately represented by the Forest Service in this litigation. Although the Ninth Circuit has recognized a general presumption that the government will adequately represent the interest of the public at large, that presumption is overcome when there exists "a likelihood that the government will abandon or concede a potentially meritorious reading of the statute [at issue]." *California ex rel. Lockyer*, 450 F.3d at 444. Of course, it is not Proposed Intervenors' burden at this early stage in the litigation to "anticipate specific differences" in the Forest Service's statutory interpretation or litigation position. *See Southwest Ctr. for Biological Diversity*, 268 F.3d at 824. Rather, "[i]t is sufficient for [Proposed Intervenors] to show that, because of the difference in interests, it is likely that Defendants will not advance the same arguments as [Proposed Intervenors]." *Id.*

In this case, Proposed Intervenors' interests in Tahoe National Forest differ from those of the Forest Service. Proposed Intervenors represent the particularized concerns of the environmental community, whereas the government represents the broader public interest. *See, e.g., Sierra Club v. Espy*, 18 F.3d 1202, 1208 (5th Cir. 1994) (timber industry granted intervention in case brought against government by environmental groups because "[t]he government must represent the broad public interest, not just the economic concerns of the timber industry"); *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1499 (9th Cir. 1995) (granting intervention to State and County because "[t]he Forest Service is required to represent a broader view than the more narrow, parochial interests of the State of Arizona and Apache County") (*abrogated in part on other grounds by Wilderness Soc'y*, 630 F.3d at 1180).

These sometimes competing interests have resulted in past litigation regarding travel management decision at other national forests between the Forest Service and some of the same groups seeking to intervene here. *See, e. g., Cent. Sierra Envtl. Res. Ctr. v. U. S. Forest Serv.*, Civ. No. 10-2172 KJM-GGH (E.D. Cal., filed Feb. 4, 2011) (Proposed Intervenors The Wilderness Society, PEER and others arguing that the Stanislaus National Forest travel decision is illegal under NEPA, APA, Travel Management Regulations, and other laws); *Idaho Conservation League v.*

*Guzman*, 766 F.Supp.2d 1056 (D. Idaho. 2011) (Proposed Intervenor The Wilderness Society challenging Forest Service travel decision for Salmon-Challis National Forest for same); *Cent. for Sierra Nevada Conservation v. U.S. Forest Serv*., 832 F.Supp.2d 1138 (E.D. Cal. 2011) (Proposed Intervenor Forest Issues Group challenging travel decision for Eldorado National Forest for same). Proposed Intervenors in this case similarly administratively appealed the Tahoe Travel Decision for what Proposed Intervenors argued were insufficient restrictions on OHVs within the Tahoe. *See* Dietz Dec. at ¶ 4; B. Rivenes Dec. at ¶ 6; D. Rivenes Dec. at ¶ 5; Schambach Dec. at ¶ 4; Attachment to Declaration of Gregory C. Loarie ("Loarie Dec."), submitted herewith, at 2.

Because the Forest Service's interests do not mirror those of Proposed Intervenors, it is likely that the Forest Service will not advance the same legal arguments as Proposed Intervenors in this case. For example, the Forest Service, FTFA, and Proposed Intervenors all argued for different characterizations of the No Action Alternative in the FEIS, which is a NEPA requirement that "allows policymakers and the public to compare the environmental consequences of the status quo to the consequences of the proposed action." *See Ctr. for Biological Diversity v. U.S. Dep't of Interior*, 623 F.3d 633, 642 (9th Cir. 2010). FTFA alleges that the Forest Service interpreted the "no action" alternative as including all routes in the existing, designated National Forest Transportation System. *Id.* at ¶ 69. In contrast, FTFA argues that the "no action" alternative actually should have included the hundreds of miles of user-created routes that were never part of the National Forest Transportation System. *See* Complaint at ¶¶ 68-70. Finally, Proposed Intervenors argued in their administrative appeal that the Forest Service's system did not disclose routes that were not analyzed under NEPA and contained numerous errors that together made the Forest Service's baseline simply inaccurate and in violation of NEPA. *See* Attachment to Loarie Dec. at 10-13.

Finally, were FTFA to prevail on the merits of their claims, the Forest Service would not adequately represent Proposed Intervenors' interests in an ensuing remedy proceeding. Only Proposed Intervenors could present evidence of direct harm to their members that would result from the relief FTFA seeks. Such information would be critical for the Court's evaluation of the balance of harms in any proceeding in equity. *See Pac. Coast Fed'n of Fishermen's Ass'ns. v. Gutierrez*,

2008 WL 4104257 *9 (E.D. Cal. 2008) (finding intervenor applicants would assist in fashioning remedy).

**II. Alternatively, Proposed Intervenors Satisfy the Standard for Permissive Intervention.**

Proposed Intervenors meet the requirements for intervention as of right under Federal Rule of Civil Procedure 24(a). However, Proposed Intervenors also meet the requirements for permissive intervention under Federal Rule of Civil Procedure 24(b), which provides that "the court may permit *anyone* to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b) (emphasis added). *See also Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1108 (9th Cir. 2002) ("[A]ll that is necessary for permissive intervention is that intervenor's claim or defense and the main action have a question of law or fact in common") (*abrogated in part on other grounds by Wilderness Soc'y*, 630 F.3d at 1180).

Here, even if intervention as of right were not appropriate under Rule 24(a), Proposed Intervenors would still be entitled to intervene permissively under Rule 24(b). In *Kootenai Tribe of Idaho* the Ninth Circuit found that an "interest in the use and enjoyment" of roadless areas was sufficient to support permissive intervention in a case that challenged rules protecting those areas from harmful development. *Kootenai Tribe of Idaho*, 313 F.3d at 1111. Similarly, in the present case, Proposed Intervenors have a substantial interest in restricting OHV use in Tahoe National Forest. *See* Dietz Dec. at ¶¶ 6-8, 10-11; B. Rivenes Dec. at ¶¶ 7-10; D. Rivenes Dec. at ¶¶ 7-10; Schambach Dec. at ¶¶ 5-8. In addition, Proposed Intervenors' expertise in the science and policy surrounding OHV use in wilderness areas could contribute to the resolution of this case.

Furthermore, Proposed Intervenors' intervention will not cause any delay in or prejudice to the existing parties in this case. Proposed Intervenors have filed their motion before the Forest Service has answered FTFA's complaint, and they are prepared to abide by any briefing and scheduling order that the Court may adopt. To the maximum extent practicable, Proposed Intervenors intend to coordinate their briefing with that of the Forest Service to avoid unnecessary duplication.

In sum, given the importance of the issues involved, the significant interests of Proposed Intervenors in the protection of Tahoe National Forest, and the early stage of this case, permissive intervention is also appropriate pursuant to Rule 24(b).

**CONCLUSION**

For all the foregoing reasons, Proposed Intervenors should be granted intervention as of right in this case under Rule 24(a). However, should the Court decide that Proposed Intervenors have not satisfied the requirements of Rule 24(a), Proposed Intervenors ask the Court to exercise its broad discretion to allow them to intervene pursuant to Rule 24(b).

Respectfully submitted,

Dated: October 3, 2012

/s/ Christopher W. Hudak
GREGORY C. LOARIE
CHRISTOPHER W. HUDAK

*Counsel for Proposed Defendant-Intervenors The Wilderness Society, et al.*