ROBERT G. DREHER
Acting Assistant Attorney General
Environment and Natural Resources Div.

BEVERLY F. LI
Trial Attorney
Natural Resources Section
Environment and Natural Resources Div.
U.S. Dept. of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Tel: 202-353-9213
Fax: 202-305-0506
Beverly.Li@usdoj.gov

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA
SACRAMENTO DIVISION

| | |
|---|---|
| FRIENDS OF TAHOE FOREST ACCESS, *et al.*)<br><br>Plaintiffs, )<br><br>v. )<br><br>UNITED STATES DEPARTMENT OF )<br>AGRICULTURE, *et al.*, )<br><br>Defendants. )<br>_____ ) | Civ. No. 12-01876-JAM-CKD<br><br>**FEDERAL DEFENDANTS' REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Date:  September 25, 2013<br>Time: 9:30 a.m.<br>Place: Courtroom 6, 14th floor<br>Judge: Hon. John Mendez |

1

**TABLE OF CONTENTS**

2

INTRODUCTION ...................................................................................................1

3

ARGUMENT .........................................................................................................1

4

5

    A.    Plaintiffs' Claims 1 and 4 Are Waived for Failure to Exhaust Administrative Remedies................................................................................................1

6

    B.    The Forest Service's Purpose and Need Statement Complies with NEPA .............3

7

8

    C.    The No-Action Alternative Properly Disclosed Baseline Conditions and Did Not Use Improper Terminology..........................................................4

9

    D.    The FEIS Considered a Reasonable Range of Alternatives.....................................5

10

11

    E.    The Forest Service Provided a Rational Explanation for Rejecting Alternative 5...............................................................................................7

12

13

    F.    The Forest Service Properly Analyzed Environmental Impacts of Unauthorized Routes..................................................................................8

14

    G.    The Forest Service Adequately Analyzed Cumulative Impacts ...........................10

15

CONCLUSION....................................................................................................10

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF AUTHORITIES**
**CASES**

*Am. Rivers v. FERC*,
    201 F.3d 1186 (9th Cir. 1999) ...................................................6, 8

*Ass'n of Pub. Agency Customers, Inc. v. Bonneville Power Admin.*,
    126 F.3d 1158 (9th Cir. 1997) .................................................6

*City of Carmel-By-The-Sea v. U.S. Dep't of Transp.*,
    123 F.3d 1142 (9th Cir. 1997) .................................................6

*Ctr. for Sierra Nev. Conservation v. U.S. Forest Serv.*,
    832 F. Supp. 2d 1138 (E.D. Cal. 2011)....................................4, 5

*Darby v. Cisneros*,
    509 U.S. 137 (1993)...............................................................3

*Dep't of Transp. v. Public Citizen*,
    541 U.S. 752 (2004) ..............................................................3

*Havasupai Tribe v. Robertson*,
    943 F.2d 32 (9th Cir. 1991) ...................................................3

*Inland Empire Public Lands Council v. U.S. Forest Serv.*,
    88 F.3d 754 (9th Cir. 1996) .................................................10

*Klamath-Siskiyou Wildlands Ctr. v. Graham*,
    899 F. Supp. 2d 948 (E.D. Cal. 2012)....................................4, 8

*Kleppe v. Sierra Club*,
    427 U.S. 390 (1976)............................................................10

*League of Wilderness Defenders-Blue Mountains Biodiversity Project v. Allen*,
    615 F.3d 1122 (9th Cir. 2010) ..............................................9

*McBride Cotton & Cattle Corp. v. Veneman*,
    290 F.3d 973 (9th Cir. 2002) ................................................3

*Mont. Wilderness Ass'n v. Connell*,
    Nos. 11-35818, 11-35821, 2013 WL 3927754 (9th Cir. July 31, 2013)............................6

*Robertson v. Methow Valley Citizens Council*,
    490 U.S.332 (1989).............................................................4

*United States v. Bohn*,

956 F.2d 208 (9th Cir. 1992) ............................................................6

*United States v. Romm,*
   455 F.3d 990 (9th Cir. 2006) ......................................................6

*Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council,*
   435 U.S. 519 (1978)..................................................................2

*Wildlands CPR, Inc. v. U.S. Forest Serv.,*
   872 F. Supp. 2d 1064 (D. Mont. 2012) ......................................2

## STATUTES

7 U.S.C. § 6912(e) ........................................................................2

## REGULATIONS

36 C.F.R. § 212.1 .........................................................................5

36 C.F.R. § 215.21 .......................................................................2

36 C.F.R. § 212.50(a).....................................................................3

40 C.F.R. § 1502.14(a)...................................................................6

69 Fed. Reg. 42,831 (July 16, 2004)................................................9

70 Fed. Reg. 68,264 (Nov. 9, 2005)...........................................4, 5, 9

**INTRODUCTION**

To implement the 2005 Motorized Travel Management Rule, the Forest Service authorized the Tahoe Motorized Travel Management Project ("Project") after extensive public involvement and after careful consideration of competing interests, such as protecting resources while providing for motorized recreation and access.  The Forest Service's Final Environmental Impact Statement ("FEIS") and Record of Decision ("ROD") for the Project contained a purpose and need statement that satisfied the National Environmental Policy Act  ("NEPA"), evaluated a reasonable range of alternatives, accurately described baseline conditions, thoroughly analyzed potential environmental effects including cumulative effects, and did not contain factual inconsistencies.  Plaintiffs cannot demonstrate any NEPA deficiency.  For the reasons discussed below and in Defendants' opening brief, the Court should grant Defendants' cross-motion for summary judgment.

**ARGUMENT**

**A.  Plaintiffs' Claims 1 and 4 Are Waived for Failure to Exhaust Administrative Remedies**

Defendants' opening brief established that Plaintiffs' Claims 1 and 4 have been waived because they were not exhausted during the administrative process.  Defs. Br. at 3-6 (ECF No. 32). While Plaintiffs argue that their administrative appeal and comments raised the issue presented in Claim 1, i.e., that the Project's purpose and need statement was not consistent with the 2005 Motorized Travel Management Rule, the portions of their appeal and comments that they cite do not show that they sufficiently raised such an issue.  According to Plaintiffs, they raised Claim 1 in their appeal when they (1) alleged that the Forest Service's alternatives analysis was inadequate due to the narrow scope of the Project which led to a predetermined outcome, and (2) alleged that the purpose and need statement presented conclusory statements.  Pls. Reply at 1 (citing TTMAR 300, 308.04, 4724-38) (ECF No. 33).  These criticisms make no mention of the 2005 Rule, and thus clearly do not present the issue Plaintiffs now raise in Claim 1 about consistency with the 2005 Rule.

Likewise, Claim 4, which alleges that the rejection of Alternative 5 was arbitrary and capricious because the Agency made inconsistent factual findings, was also not sufficiently raised

during the administrative process.[1]  The portions of their appeal and the comments that Plaintiffs cite did not discuss inconsistent rationales related to Alternative 5.  Pls. Reply at 2 (citing TTMAR 4809-5422, 4812, 300).[2]  Plaintiffs quote their appeal which stated that "the Forest Service did not have a duty to evaluate alternatives inconsistent" with the purpose of the Project, TTMAR 300, but do not explain how this language relates to Claim 4.  Plaintiffs apparently seek to conjure up a linkage to the fact-finding related to Alternative 5 based on the mere use of the word "inconsistent" in the different context of the alternatives analysis.  Plaintiffs' attempt falls well short of their duty to provide fair notice to the Forest Service of their concerns.  The Supreme Court has stated that plaintiffs seeking to challenge an agency action must "structure their participation [in the administrative process] so that it is meaningful, so that it alerts the agency to the [participants'] position and contentions."  *Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council*, 435 U.S. 519, 553 (1978).  Here, Plaintiffs' comments and appeal did not alert the Agency to Claims 1 and 4.

Plaintiffs' efforts to distinguish the well-established case law Defendants cited in their opening brief regarding waiver and exhaustion of administrative remedies miss the mark.  Pls. Reply at 2-3.  Plaintiffs' argument that 7 U.S.C. § 6912(e) and 36 C.F.R. § 215.21 require only that a plaintiff follow administrative appeal *procedures* without specifically raising the issues it later seeks to bring in a complaint would turn the waiver and exhaustion requirements on their head.  Taken to its logical conclusion, Plaintiffs' position would permit them to raise all manner of new claims for the first time in their Complaint, so long as they had commented and filed an administrative appeal and thereby followed the requisite *procedures*, regardless of the substantive content of the concerns they articulated.  Defendants do not dispute that Plaintiffs did file an administrative appeal.  Rather, Defendants assert that Plaintiffs did not sufficiently articulate during the administrative process the

---

[1]  Plaintiffs claim they could not comment on the factual inconsistencies in the FEIS because the Draft EIS did not contain them, Pls. Reply at 2, but even assuming this were true, it does not excuse Plaintiffs' failure to raise this issue in their appeal and thereby exhaust administrative remedies.
[2]  Plaintiffs also reference the California Off-Road Vehicle Association's ("CORVA") comments on the Draft EIS, Pls. Reply at 2, but CORVA is not a party to this litigation and Plaintiffs cannot rely on the comments of a third party to show that they have exhausted administrative remedies in their own right under 7 U.S.C. § 6912(e).  *Wildlands CPR, Inc. v. U.S. Forest Serv.*, 872 F. Supp. 2d 1064, 1074 (D. Mont. 2012).  Furthermore, CORVA's comments do not sufficiently raise Plaintiffs' Claim 4.  CORVA's comments reflect a concern with the allegedly arbitrary application of regulations and the absence of discernible standards to measure the quality of the proposed action, without asserting that facts regarding Alternative 5 were misrepresented.  TTMAR 4812.

1   basis for the particular issues they seek to pursue in Claims 1 and 4 of their Complaint.  Accordingly,

2   *Department of Transportation v. Public Citizen*, 541 U.S. 752, 764–65 (2004);  *Darby v. Cisneros*,

3   509 U.S. 137, 146–47 (1993); *McBride Cotton & Cattle Corp. v. Veneman*, 290 F.3d 973, 980 (9th

4   Cir. 2002); and *Havasupai Tribe v. Robertson*, 943 F.2d 32, 34 (9th Cir. 1991), which were

5   discussed in Defendants' opening brief, are all on point.   Therefore, the Court should find that

6   Claims 1 and 4 have been waived.

7   **B. The Forest Service's Purpose and Need Statement Complies with NEPA**

8          As established in Defendants' opening brief, if the Court finds that Claim 1 is not waived, the

9   Court should find that the Project's purpose and need statement complies with NEPA because the

10  Forest Service was entitled to adopt a purpose and need statement that implemented the 2005

11  Motorized Travel Management Rule.  Defs. Br. at 6-9.  The 2005 Rule requires the Forest Service to

12  provide for a system of designated roads, trails, and areas, and to prohibit public motor vehicle travel

13  off of that designated system.  36 C.F.R. § 212.50(a); TTMAR 388 (FEIS at 7).  The purpose and

14  need of the Project is to (1) regulate unmanaged cross-country wheeled vehicle travel by the public

15  and thus implement the 2005 Rule, and (2) make limited changes to the Tahoe National Forest's

16  Transportation System to provide motorized access to existing dispersed recreation activities and to

17  provide a diversity of motorized recreation opportunities.  TTMAR 388 (FEIS at 7-8; ROD at 1-2).

18  There is no question that this purpose and need statement is consistent with the 2005 Rule.  Plaintiffs

19  provide no basis for their belief that the Forest Service "presumptively assume[d] that many

20  historical routes w[ould] not be designated."  Pls. Reply at 5.  Rather, the Project's purpose and need

21  merely reflects that the Forest Service would fully implement the 2005 Rule and its requirement to

22  prohibit public motor vehicle use off of designated trails and areas on National Forest System lands.

23         Plaintiffs further contend without any support that Defendants' position regarding the

24  adequacy of the purpose and need statement relies on "semantic slight-of-hand."  Pls. Reply at 5.

25  But they do not, and cannot, show that Defendants' characterization of its own 2005 Rule is

26  inaccurate.  The 2005 Rule undoubtedly requires the Forest Service to prohibit motor vehicle use off

27  of designated roads and trails.  The Forest Service was clearly entitled to craft the Project's purpose

28  and need statement based on the requirements of the 2005 Rule, as this Court previously held in

1    connection with travel management plans on other National Forests that implemented the 2005 Rule.

2    *See Klamath-Siskiyou Wildlands Ctr. v. Graham*, 899 F. Supp. 2d 948, 958 (E.D. Cal. 2012)

3    (upholding purpose and need statement for Klamath National Forest's travel management plan); *Ctr.*

4    *for Sierra Nev. Conservation v. U.S. Forest Serv.*, 832 F. Supp. 2d 1138, 1157 (E.D. Cal. 2011)

5    (upholding purpose and need statement for Eldorado National Forest's travel management plan).

6         To the extent Plaintiffs blur their claim regarding the purpose and need statement with

7    assertions that the Forest Service substantively did not comply with the criteria in the 2005 Rule, Pls.

8    Reply at 4-5, such an argument is not properly raised as a NEPA claim.[3]  NEPA is a procedural

9    statute that does not dictate a particular substantive result.  *Robertson v. Methow Valley Citizens*

10   *Council*, 490 U.S.332, 350 (1989).  In any event, the administrative record amply documents the

11   Forest Service's consideration of the 2005 Rule's criteria for designation of trails and areas for

12   motorized vehicle use.  TTMAR 388 (ROD at 28-30; FEIS at 8, 42, 669-719 (recreation impacts,

13   conflicts), 735-746 (public safety), 793-809 (private land, adjacent ownership); 70 Fed. Reg. 68,264,

14   68,266 (Nov. 9, 2005); *id.* at 68,275-76; *id.* at 68, 286 (discussing "valid existing rights" such as

15   property interests in rights-of-way).  Thus, the Court should find that the purpose and need statement

16   satisfied NEPA.

17   **C. The No-Action Alternative Properly Disclosed Baseline Conditions and Did Not Use**
18   **Improper Terminology**

19        As established in Defendants' opening brief, the Forest Service in describing the no-action

20   alternative accurately described baseline conditions by stating that motorized travel off the National

21   Forest Transportation System ("NFTS") is currently allowed but "unauthorized."  Defs. Br. at 9-11,

22   20-21.  The FEIS accurately disclosed that the status quo had some portions of the Tahoe National

23   Forest open to cross-country motor vehicle use, which resulted in the development by recreational

24   users of unauthorized routes that do not have the same status as roads and trails included in the

25   NFTS.  TTMAR 388 (FEIS at 2, 22, 102).  For example, the FEIS states that under the no-action

26   alternative, "there would be *no prohibition on cross country travel*" and "[m]otor vehicle travel by

27   the public would not be limited to designated routes."  TTMAR 388 (FEIS at 22).

28   _____

[3] Plaintiffs did not allege in their Complaint any claim that the Project does not comply with the 2005 Rule.  Thus, any such claim is not properly before the Court.

Plaintiffs' argument about the adequacy of the Forest Service's disclosure of baseline conditions is based on their misunderstanding of the term "unauthorized." Pls. Reply at 5-6. Plaintiffs take issue with the FEIS's statement that under the no-action alternative "unauthorized routes would continue to proliferate and would have no status or authorization," TTMAR 388 (FEIS at 36), claiming that the FEIS suggested that travel on unauthorized routes was illegal or not allowed. The quoted language, however, simply explains that unauthorized routes are not part of the NFTS, without declaring that use of unauthorized routes under the status quo was illegal. *See Ctr. for Sierra Nev.*, 832 F. Supp. 2d at 1147 (explaining that although unauthorized routes had not received official approval, designation, or maintenance, they were not necessarily illegal, because off-road and cross-country travel was previously permitted). The Project language the Forest Service used for unauthorized routes is consistent with the 2005 Rule, *see* 36 C.F.R. § 212.1; 70 Fed. Reg. at 68,277 (TTMAR 1216) (defining "unauthorized road or trail" without reference to illegality). At best, Plaintiffs present a strained reading of the language in the FEIS, but the "clear linguistic implication" they seek to create by associating the term "unauthorized routes" with illegal use falls flat. Pls. Reply at 6. Quite simply, the Forest Service did not state or imply that travel on unauthorized routes was illegal under the no-action alternative. Therefore, Plaintiffs' claim about the accuracy of the disclosure of baseline conditions under NEPA fails. Likewise, their claim that the Agency's terminology allegedly skewed the decision-making process, which is premised on the same argument about the use of the term "unauthorized," Pls. Reply at 9, also fails.

## D.  The FEIS Considered a Reasonable Range of Alternatives

Defendants' opening brief established that the FEIS considered a reasonable range of alternatives by examining in detail six action alternatives and the no-action alternative, while briefly considering but rejecting thirteen other action alternatives from further study. Defs. Br. at 11-15. The action alternatives presented scenarios that ranged from adding no unauthorized routes to the NFTS, to adding 80.4 miles of unauthorized trails and roads to the NFTS. TTMAR 388 (FEIS at 23-33). The scope of the alternatives evaluated in the FEIS clearly met NEPA's requirements for consideration of a reasonable range of alternatives. 40 C.F.R. § 1502.14(a); *see Ass'n of Pub. Agency Customers, Inc. v. Bonneville Power Admin.*, 126 F.3d 1158, 1185 (9th Cir. 1997) (range of

1    alternatives should "permit a reasoned choice" to agency decision-maker).  Merely because an

2    agency could have analyzed more alternatives does not mean that NEPA requires it to do so.  *Mont.*

3    *Wilderness Ass'n v. Connell,* Nos. 11-35818, 11-35821, 2013 WL 3927754, at *13 (9th Cir. July 31,

4    2013) (NEPA did not compel agency to analyze another alternative that would have opened more

5    than zero but less than six airstrips, when plaintiffs failed to show how consideration of another mid-

6    range alternative would have fostered agency decision-making and public participation).

7           In their reply brief, Plaintiffs raise a new argument regarding the alternatives analysis for the

8    first time.  They contend that the Forest Service should have included among its alternatives analysis

9    further detailed assessment of designating existing, unauthorized routes that either no member of the

10   public had recommended for inclusion in the NFTS or that terminated on private property.  *Compare*

11   Pls. Reply at 6-7 (ECF No. 33) *with* Pls. Opening Br. at 13-14 (ECF No. 31-1).  Plaintiffs' failure to

12   assert this argument earlier should operate as a waiver.  *See United States v. Romm*, 455 F.3d 990,

13   997 (9th Cir. 2006) ("[A]rguments not raised by a party in its opening brief are deemed waived.");

14   *United States v. Bohn*, 956 F.2d 208, 209 (9th Cir. 1992) (courts generally decline to consider

15   arguments raised for the first time in a reply).

16          Even if the Court finds that Plaintiffs have not waived their new argument regarding the

17   range of alternatives in the FEIS, their argument lacks merit.  A rule of reason guides "both the

18   choice of alternatives as well as the extent to which the Environmental Impact Statement must

19   discuss each alternative."  *City of Carmel–By–The–Sea v. U.S. Dep't of Transp.,* 123 F.3d 1142,

20   1155 (9th Cir. 1997); *Am. Rivers v. FERC*, 201 F.3d 1186, 1199-200 (9th Cir. 1999).  It was entirely

21   reasonable for the Forest Service not to consider in greater detail existing routes that did not appear

22   to be of interest to Plaintiffs, or any member of the public.  Given the extensive system of existing

23   roads and motorized trails that were already part of the NFTS and the proliferation of unauthorized

24   routes under the status quo where there was no prohibition on cross-country travel, the Forest

25   Service properly determined to consider specific combinations routes but not to evaluate in detail

26   adding all existing routes.  TTMAR 388 (ROD at 1-2, 9-10, 12-13, 17; FEIS at 1, 6-8, 35).  If an

27   entity was concerned about the inclusion of a particular existing route on the NFTS, that entity had

28   multiple opportunities to bring that existing route to the Forest Service's attention.  TTMAR 388

(ROD at 17-18; FEIS at 11, 844-46) (summarizing opportunities for public involvement from pre-scoping through the FEIS); TTMAR 2905-10360.  Likewise, it was reasonable for the Forest Service not to consider in detail for designation existing routes that would terminate at a private parcel because allowing continued use on such a route would potentially lead to trespass onto private lands, which is currently a problem for some owners.  TTMAR 388 (FEIS at 690, 696, 700, 705, 709, 793, 795, 799-800).   In short, the FEIS's range of alternatives was reasonable and should be upheld.

**E.  The Forest Service Provided a Rational Explanation for Rejecting Alternative 5**

Plaintiffs continue to contend that the Forest Service did not articulate a rational explanation for its rejection of Alternative 5 and attempt to confuse the Court regarding differing points of comparison between alternatives.  Pls. Reply at 7.  When viewed in context, however, it is clear that the statements Plaintiffs cherry-pick from the administrative record do not present factual inconsistencies regarding the effects of Alternative 5.  As established in Defendants' opening brief, Defs. Br. at 16-18, the Forest Service properly compared Alternative 5 to the action alternatives and found that Alternative 5 would have the greatest negative impacts on air quality, while also concluding that Alternative 5 would improve air quality when compared to the no-action alternative. TTMAR 388 (FEIS at 68-69, 72, 74, 79).

Plaintiffs now focus on the FEIS's statement that "under all alternatives, levels of emissions (other than fugitive dust) from motorized recreation use would increase by the same amount," TTMAR 388 (FEIS at 67), and contend that it is inconsistent with the statement that Alternative 5 has the greatest impact on air quality among the action alternatives, as well as the statement that the no-action alternative would have a greater impact on air quality.  Plaintiffs' understanding of the quoted language about emission levels is flawed.  When analyzing the alternatives' potential effects on air quality, the FEIS considered effects on three aspects of air pollution: emissions (i.e., sulfur compounds, nitrogen compounds, and carbon oxides), ozone, and fugitive dust (particulate matter). TTMAR 388 (FEIS at 67-79).  Emissions levels from motor vehicle use are only one component of the overall air quality analysis.  Thus, the FEIS accurately stated that emissions levels from motor vehicle use would be the same under all alternatives, while different conclusions about effects would apply when air quality as a whole (including fugitive dust) is considered.  *Id.*

1   Further, Plaintiffs argue that Alternative 5 cannot have increased impacts on watershed

2   resources when compared to the other alternatives if most of the watershed impacts already occurred

3   in the past.  Pls. Reply at 7 (referencing TTMAR 388 (FEIS at 131)).  Plaintiffs' argument ignores

4   common sense.  Simply because impacts on watershed resources have already occurred does not

5   preclude Alternative 5 from having the second greatest impact on watershed resources when the

6   future impacts of the action alternatives are compared.  That is, the hydrologic footprint created by

7   repeated motor vehicle use has already occurred, but future impacts will vary by alternative based on

8   the amount of motor vehicle use, whether the alternative includes routes on highly erosive soils,

9   season of use, and the potential for recovery.  TTMAR 388 (FEIS at 130-31); *see Klamath-Siskiyou*

10   *Wildlands Ctr.*, 899 F. Supp. 2d at 965 (holding that Forest Service did not need to analyze impacts

11   of the existing NFTS infrastructure and finding that Agency reasonably concluded that eliminating

12   most off road vehicle access would foster better water conditions).  For these reasons, the Court

13   should reject Plaintiffs' argument about alleged inconsistent factual findings regarding Alternative 5.

14   **F.  The Forest Service Properly Analyzed Environmental Impacts of Unauthorized Routes**

15   Although Plaintiffs assert that the Forest Service should have further evaluated routes that

16   were not historically part of the NFTS, Pls. Reply at 8, their argument fails because it focuses

17   myopically on the table found at TTMAR 10698-720, rather than on the entire picture painted by the

18   administrative record.  Plaintiffs ignore the FEIS's detailed analysis of the no-action alternative that

19   considered the potential environmental effects of continuing to allow cross-country motor vehicle

20   use, including on routes that were not historically part of the NFTS.  *See generally* TTMAR 388

21   (FEIS, Ch. 3).  The Forest Service established an appropriate baseline for its no-action alternative.

22   TTMAR 388 (FEIS at 23).  In doing so, the Forest Service conducted a thorough inventory of

23   existing NFTS roads and trails, taking into consideration historical use.  *See* TTMAR 388 (FEIS at

24   4-6, App. N at N-24 to N-28).

25   Plaintiffs' argue that the Forest Service allegedly neglected to analyze environmental impacts

26   of 456 existing routes for addition to the NFTS repackages their unpersuasive alternatives argument.

27   Pls. Reply at 8-9.  They again contend that further analysis of these routes that were not specifically

28   recommended by the public for designation into an action alternative was required under NEPA.

Not so.  As explained in Defendants' opening brief, the Forest Service reasonably used a practical screening process to determine which unauthorized routes should be considered further for proposed designation by relying on maps, aerial photographs, prior NEPA decision documents, right-of-way records, and field observations.  Defs. Br. at 18-20; TTMAR 10698-720.  It was entirely reasonable for the Agency to focus on analyzing in detail only designating existing routes that the public specifically recommended, given the numerous routes on the Tahoe National Forest and the need to regulate unmanaged cross-country travel.  *See* 70 Fed. Reg. at 68,264-65; 69 Fed. Reg. 42,831, 42,384 (July 15, 2004).  Routes that were not of interest to the public would not appear to be needed for important public recreational or access purposes.  The Project's extensive public involvement process was more than sufficient to identify routes users believe are important.  TTMAR 388 (ROD at 17-18; FEIS at 11, 844-45); TTMAR 2905-10360.  The Forest Service considered the unauthorized routes raised by the public.  TTMAR 388 (FEIS, App. N at N-156 to N-236).

In essence, Plaintiffs are belatedly trying to undermine the Forest Service's practical process for determining the extent of the environmental analysis that would be helpful to inform the Agency's decision-making.  But conducting a detailed analysis of more routes for addition to the NFTS would have had substantially similar consequences to alternatives that the Forest Service had already considered.  *See* Defs. Br. at 14; TTMAR 388 (FEIS at 22-35; ROD at 20, 23-24).  Since Alternative 5 which would have designated motor vehicle use on 80.4 miles of roads and trails was already found to have potential adverse impacts on various resources that were not outweighed by the recreational benefits, TTMAR 388 (ROD at 23-24; FEIS at 28), considering more routes that would further increase adverse effects was not needed.  The subset of unauthorized routes that the Forest Service analyzed in detail for potential designation satisfied the "rule of reason" standard that the Court uses "to determine whether the EIS contains a reasonably thorough discussion of the significant aspects of the probable environmental consequences."  *League of Wilderness Defenders-Blue Mountains Biodiversity Project v. Allen*, 615 F.3d 1122, 1130 (9th Cir. 2010).  Accordingly, the Court should uphold the Forest Service's analysis of site-specific impacts.

**G.  The Forest Service Adequately Analyzed Cumulative Impacts**

The Forest Service was not arbitrary or capricious in defining the scope of its cumulative

1   impacts analysis to the boundaries of the Tahoe National Forest, which covers over 850,000 acres.

2   Plaintiffs' contentions that the Forest Service should have conducted at least a qualitative cumulative

3   impacts analysis that extended beyond the borders of the Tahoe National Forest lack merit.  Pls.

4   Reply at 9-10.  The FEIS clearly explained that any changes in recreational use outside of the Tahoe

5   National Forest would be speculative, TTMAR 388 (FEIS, App. N at N-126 to N-127), and thus

6   would not result in a useful cumulative effects analysis.

7          The case law discussed in Defendants' opening brief, Defs. Br. at 22-24, controls here,

8   regardless of Plaintiffs' protestations.  Pls. Reply at 9-10.  Plaintiffs argue that *Kleppe v. Sierra*

9   *Club*, 427 U.S. 390, 414 (1976), in which the Supreme Court stated that agencies have a special

10  competency in determining the geographic area in which effects may occur, is inapplicable to the

11  cumulative effects context.  But their attempt to distinguish *Kleppe* because it involved the

12  appropriate scope of an EIS does not withstand scrutiny.  By discussing the scope of an EIS, the

13  Supreme Court articulated principles that carry over to an agency's assessment of the geographic

14  scope of an EIS's cumulative effects analysis.  As such, *Kleppe* is directly on point and should be

15  followed here.  Likewise, *Inland Empire Public Lands Council v. U.S. Forest Service*, 88 F.3d 754

16  (9th Cir. 1996), is also apposite.  While the Ninth Circuit noted that a cumulative effects claim was

17  not directly presented in the appeal, the court nevertheless determined that the Forest Service could

18  confine the scope of its EIS to the project boundaries, and further stated that to the extent the

19  plaintiffs did seek to expand the scope of the cumulative effects analysis beyond the watershed area

20  which the agency had analyzed, they had advanced no reason that such a broader analysis was

21  necessary.  *Id.* at 764.  Therefore, Plaintiffs' cumulative effects claim should be rejected.

22                                   **CONCLUSION**

23         The Court should uphold the Forest Service's well-reasoned decision to authorize the Project.

24  The Forest Service's detailed FEIS and ROD satisfied NEPA's requirements regarding the purpose

25  and need statement, the disclosure of baseline conditions, the range of alternatives, the rationale for

26  rejecting Alternative 5, the analysis of impacts of unauthorized routes, and the cumulative effects

27  analysis.  Accordingly, the Court should grant Defendants' Cross-Motion for Summary Judgment.

28

1    Respectfully submitted this 23rd day of August, 2013.

2                                    ROBERT G. DREHER
3                                    Acting Assistant Attorney General

4                                    /s/ Beverly Li
                                     BEVERLY F. LI (WA BN 33267)
5                                    Trial Attorney
                                     U.S. Department of Justice
6                                    Environment & Natural Resources Div.
                                     P.O. Box 7611
7                                    Washington, DC 20044-7611
                                     Telephone: (202) 353-9213
8                                    Facsimile: (202) 305-0506

9                                    Attorney for Federal Defendants

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on August 23, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send electronic notification of such filing to the following:

M. Reed Hopper
Pacific Legal Foundation
930 G Street
Sacramento, CA 95814
(916) 419-7111
Fax: (916) 419-7747
Email: mrh@pacificlegal.org


Theodore Cirilo Hadzi-Antich
Pacific Legal Foundation
930 G Street
Sacramento, CA 95814
916-419-7111
Fax: 916-419-7747
Email: tha@pacificlegal.org

Attorneys for Plaintiffs

Gregory C. Loarie
Christophe W. Hudak
Earthjustice
50 California Street, Suite 500
San Francisco, CA 94111
415-217-2000
Fax: 415-517-2040
gloarie@earthjustice.org
chudak@earthjustice.org

Attorneys for Defendants-Intervenors

/s/ Beverly F. Li
Beverly F. Li
Counsel for Federal Defendants